IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CATERINA VARRASSO

        Plaintiff,

                                No.    2:17-cv-01226-NBF

      v.

HOME DEPOT U.S.A., INC. and
MASTERBRAND CABINETS, INC.

        Defendants.

---

**PLAINTIFF CATERINA VARRASSO'S BRIEF IN RESPONSE
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I.  INTRODUCTION

Plaintiff Caterina Varrasso (Plaintiff ) by and through her undersigned counsel file this brief in opposition to Defendant's Motion for Summary Judgment. For reasons set forth herein, the Defendants Motion for Summary Judgment should be denied.

Defendant is requesting Summary Judgment based on the evidence that has been submitted to date. Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing the evidence, the court must draw all reasonable inferences in favor of the non-moving party. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); Huston v. Procter & Gamble Paper Prod. Corp., 568 F.3d 100, 104 (3d Cir. 2009) (citations omitted). It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations.

## II.    FACTS

In its effort to defeat Plaintiff's claim against them Defendants Home Depot U.S.A., Inc. ("Home Depot") and Masterbrand Cabinets, Inc. ("Masterbrand") (collectively, "Defendants"), for

1

argument purposed, are willing to concede the fact that the cabinets were Maple instead of the Cherry that the Plaintiff had ordered. Based on this concession, it is their argument that there no genuine dispute of material fact exists. It is their contention the Plaintiff had reasonable opportunity to inspect the cabinets when they were delivered and that she knew or should have known that the wrong cabinets had been ordered and shipped to her upon a visual inspection.

In this case and the species of wood is just one of numerous issues that the Plaintiff had with the cabinets that were delivered. Upon installation it was discovered that the configuration was not correct, that there were pieces missing, the crown molding and kick plates were missing, that there were pieces included in the order that did not belong, that there were drawers where there should have been doors and drawers where there should have been doors and finally that the cabinets were staggered instead of straight. Doc. 1,Complaint at ¶¶ 24, 25, 26, Doc 3, Deposition at Pg. 46 line 9 - Page 47, line 7.) In addition to this and perhaps the least important of these issues was the finish/species of the wood. None of these defects could have been discernable until the installation of the cabinets including the species of wood because the finish on them was so similar. Doc. 4, Affidavit at ¶ 10. All of these issues could not have been discovered without installation.

**The parties do not disagree on the finish**. In her complaint Plaintiff indicated that she ordered Cherry kitchen cabinets with a Teaberry finish. Doc. 1, Complaint at ¶¶ 12-14. Defendants in their Answer indicate that the Plaintiff ordered walnut cabinets with a Teaberry finish. See Doc. 2, Answer at ¶¶ 13, 14. This leaves a dispute between the parties as to whether the Plaintiff or anyone could discern the species of wood through a basic visual inspection. Our answer is no. It is our belief that this one of many issues for the factfinder to determine.

Plaintiff initially found out that the cabinets she received were not the correct species not from inspection but from Home Depot employees when Home Depot told her that she had ordered maple instead of cherry. At that time she was told that the exemplar she had viewed was made of maple, that the cabinets she received were correct and that they would darken and look like the sample as they aged.

It was not until the cabinet was dissected that she was able to determine the actual species of the exemplar and confirm that the cabinet species was not correct.

## III.    ARGUMENT

Based upon the assumption that, Plaintiff would have discovered the defect upon visual inspection of the cabinet, defendant refers to section 2606(a) of the Pennsylvania Uniform Commercial Code - What constitutes acceptance of goods, in its assertion that Plaintiff accepted the nonconforming goods in question.  Section 2606 provides:

(a)  General Rule.--Acceptance of goods occurs when the buyer:

(1)  after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity;

(2)  fails to make an effective rejection (section 2602(a)), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or

(3)  does any act inconsistent with the ownership of the seller; but if such act is wrongful as against the seller it is an acceptance only if ratified by him.

It is Defendants argument that Mrs. Varrasso accepted the goods by failing to reject them immediately and/or by doing acts inconsistent with the ownership of the seller.  However, one of the conditions to this rule is that the buyer must have a "reasonable opportunity to inspect the goods" Plaintiff has always indicated that she did not have the reasonable opportunity to inspect the goods prior to their installation.

Plaintiff is an elderly woman more than seventy years old with neither the expertise nor the physical ability to open, unbox and inspect thirty boxes of cabinets. Doc. 4, Affidavit at ¶¶ 2-3.  She made the Defendants aware that she would not be installing these cabinets for an undetermined amount of time and asked them to retain them. Doc. 1, Complaint at ¶¶ 21-22.  For defendants to have expected her to make such an inspection is not reasonable under the circumstances.  Defendants were aware of the delay

3

but still forced her to take shipment. Doc. 4, Affidavit at ¶ 7, Doc. 1, Complaint at ¶¶ 21-22. Defendant also makes the presumption that the species of the cabinets could have visibly determined by visual inspection. Although she reviewed the installation, she was sure that they configuration was not correct but she was not sure of the finish. Doc. 4, Affidavit at ¶¶ 9-10. She only became aware that they were maple when Home Depot employees informed her that the order was for maple. When she discussed it with Defendant agents and/or employees, they insisted that it was all correct, the entire order, including the finish and the species. Doc. 4, Affidavit at ¶ 11, Doc. 1, Complaint at ¶ 33.

Although all of the defects regarding the cabinets were listed together, Plaintiff did not actually disagree with Defendants' claims regarding the finish of the cabinets (teaberry) but only the species and she was not sure of the species being incorrect until the cabinet was dissected some time later. Doc. 1, Complaint at ¶ 35, Doc. 4, Affidavit at ¶ 12. The parties agreed on the finish that Plaintiff ordered and the question then becomes whether Plaintiff could have determined by sight alone what the species of the cabinets were. It is our contention that should could not. She testifies in her deposition that she did not even know how to determine the species of the cabinets until it was explained to her by a cabinet expert. Doc. 3, Deposition at p. 53 line 6-18. If she could have determined the species on sight, then there would have been no need to dissect the exemplar.

The second section of 2606(1)(a) provides that the buyer must "signify that they were conforming or accept them in spite of their nonconformity." At no point did Plaintiff signify acceptance in fact, she immediately rejected them after she had a reasonable opportunity to inspect them. She removed them and put them in boxes.

Defendant then argues that Plaintiffs actions were not reasonable under the Uniform Commercial Code, in essence nullifying any rejection of the goods. The requirement to provide sufficient notice of a breach is governed by 13 Pa.C.S.A. §§ 2608(b), 2607(c)(1), of the Uniform Commercial Code. These statutes provide that:

§ 2608. Revocation of acceptance in whole or in part

4

(b) Time and notice of revocation.--Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

§ 2607. Effect of acceptance; notice of breach; burden of establishing breach after acceptance; notice of claim or litigation to person answerable over

(c) Notice of breach.--Where a tender has been accepted:

(1) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy;...

13 Pa.C.S.A. §§ 2608(b), 2607(c)(1) (emphasis added).

Reasonableness is not confined to a specific time-table, nor can it be examined in a vacuum. See 13 Pa.C.S.A. § 1205 ("Whether a time for taking an action required by this title is reasonable depends on the nature, purpose and circumstances of the action."); see also *Smith v. Penbridge Associates, Inc., 440 Pa. Super. 410, 655 A.2d 1015, 1020 (Pa. Super. 1995) citing Ford Motor Credit Co. v. Caiazzo, 387 Pa. Super. 561, 564 A.2d 931 (Pa. Super. 1989)* (stating "what is a reasonable time after tender or delivery for rejection or revocation of defective goods is generally deemed a question of fact to be resolved by the fact finder, and no express outside time limit is set."). *Lombard Metals Corp. v. AMG Res. Corp., 2015 Phila. Ct. Com. Pl. LEXIS 109*

Defendant focuses on Section 2606(a)(3) which states that acceptance takes place when a buyer "does any act inconsistent with the ownership of the seller; but if such act is wrongful as against the seller it is an acceptance only if ratified by him." It is defendant's contention that said acceptance took place when the Plaintiff installed the cabinets in her kitchen. As stated in her complaint, she was not present when the installation took place Complaint at ¶ 24, Deposition at p.43 line 21-25 p. 44 lines 1-8.

Defendant claims that by installing the cabinets that Plaintiff performed an act inconsistent with the sellers (Home Depot's) interest. Defendant has never conceded that the cabinets were made of the wrong species, or for that matter were of the wrong configuration, that pieces were missing or that included pieces were completely incompatible. Assuming arguendo that the parties had agreed upon the species, Defendant's would have still denied the other errors in the cabinets for which Plaintiff is entitled

to damages. Even with acceptance of the maple cabinets as they were, Plaintiff still did not receive the complete finished kitchen that she ordered.

The employees and/or agents of Home Depot and Decora insisted that the exemplar was the same as the cabinets she received and that the exemplar was made of maple. Even after the exemplar was determined to be cherry and Plaintiff inspected and identified the problem with the species, the Defendant still denied her claim. It has always been and still is Defendant's position that there was no error with the order: The finish and/or species and the components that made up the order that the Plaintiff received is what she ordered. Doc. 1, Complaint at ¶ ¶ 33, 34, Doc. 2, Answer at ¶ 14.

Mrs. Varrasso's deposition was taken on January 2, 2018 at Defendants' request. In her deposition she stated that she ordered cherry cabinets from a sample that she had chosen. Doc. 3 Deposition at p. 15 line 18-25. She indicated that she wanted straight cabinets instead of staggered with crown molding, drawers instead of doors and pull out drawers inside the doors. Doc 3 Deposition at p. 23, 1-13. Just as Defendant argues that the finish and species was correct, Plaintiff can make the same argument assuming that if maple was the correct species and the finish was correct, there are additional material defects with the cabinets that need to be remedies. These defects would not and could not have been discerned without installation. Doc. 1 Complaint at ¶¶ 24, 25, 26. Defendant has refused to acknowledge any of these defects which Plaintiff would not have discovered without installation. It is obvious that visual inspection could not have revealed these defects without installation.

Defendants' cite numerous cases in support of its argument that Plaintiffs installation was tantamount to acceptance. None of them are controlling in light of the facts of this case. These cases can be distinguished from the facts and circumstances of this case. First, after the installation, the Plaintiff removed the cabinets and re-boxed them as soon as she could after the defects were discovered with little or no damage and second, in all of the other cases the buyers in their scenarious were professional companies, not individual consumers, with the ability and the expertise to inspect the goods upon receipt. It is for this reason that the reasonableness of a buyer's actions in the acceptonce of goods must be determined based on the circumstances of each case. The expectations of the behaviour of a large professional company cannot be the same for a private individual.

In each of the Pennsylvania cases cited by the Defendants, the nonconforming goods were either used or they were altered in such a fashion that they could not or were not removed. In *Marjam Supply Co. v. BCT Walls & Ceilings*, Inc., *CIV.A. 02-CV-2890, 2003 WL 21497515, at *4 (E.D. Pa. June 26, 2003)*, the Defendant refers to the goods as certain goods including studs for wall which by their very nature cannot be removed without damage. *Marbelite Co. v. City of Philadelphia, 222 A.2d 443 (Pa. Super. 1966)*, refers to traffic signal equipment which were installed and actually used by the City of Philadelphia. Plaintiff never used the cabinets and immediately removed them. Defendant's own case law is in accordance with this finding. In *Lang v. Fleet, 22 Pa.Dist. & Co.R.2d 361, affirmed per curiam F. W. Lang Co. v. Fleet, 193 Pa. Super.365, 165 A.2d 258")*, the court stated: "We believe the **use** of the equipment … is patently inconsistent with the seller's ownership and, therefore, constitutes acceptance under the Uniform Commercial Code. *Emphasis added.* In the instant case there was no use of the goods in question.

Also in contrast to this case, each of the cases cited by the defendants refer to commercial transactions between sizeable companies who have professionally trained employees or agents with the ability and texpertise to inspect and determine whether or not goods are conforming. In those circumstances, it is reasonable to expect an immediate inspection and determination as to conformity. However, this is private individual, a septuagenarian, who has no training and does not have the physical ability to inspect these cabinets. In these circumstances, it was not unreasonable for the Plaintiff to rely on the reputation and representations of a company like Home Depot that upon delivery, her order was correct and, if it was not, that they would make it right. All of the "sister state" cases cited by the defendant can be similarly distinguished from the case at hand.

It is Defendants contention that the period of 2 months is also an unreasonable delay for a buyer to wait before inspection to take place. Under Pennsylvania law, what is a reasonable time after tender or delivery for rejection or revocation of defective goods is generally deemed a question of fact to be resolved by the fact finder, and no express outside time limit is set." *Ford Motor Credit Co. v. Caiazzo, 387 Pa. Super. 561, 564 A.2d 931 (1989) (citations omitted).*

7

The case law states that reasonableness must be determined by the circumstances of each case. It is our opinion that this question is just one of many for the jury to determine. Under the current circumstances of this case, it was not unreasonable for Plaintiff to wait until installation to inspect the cabinets for nonconformity as she relied on the professionalism and expertise of the defendant in ordering her cabinets accurately.  A case on par with this case is *Smith v. Penbridge Associates 440 Pa. Super 410,655 A.2d* 1015(1995) the superior court wherein the court found that it was not unreasonable for the defendant's to delay almost 2 months until the the inspection of  purchased goods (emus) when it would be difficult for the purchaser to do a full inspection.

The species of wood was only determined when the exemplar was dissected.  The record to this point shows that the Plaintiff was not sure about the species of the wood of the cabinets that she received.  Doc. 4, Affidavit at ¶ 9.  Even when she questioned it, she was also told by Home Depot's agents and employees that the order was correct and that color would darken over time.  Doc. 1, Complaint at ¶ 35.  She indicates that she did not know how to determine the species until it was explained to her. Doc 3 Deposition at  p.53.  Accordingly the determination of the species was not discernable by simply looking at the cabinet.  Mrs. Varrasso only confirmed that there was an error with the species of wood when she had the sample dissected.  Affidavit at ¶ 13

Assuming arguendo that the species could be determined on sight, at no time has Defendant ever conceded any of the defects of the order.  Even if the finish and species were easily discernable, Defendant's would have still denied the error and there would still be material issues of fact.  Despite looking at the exemplar the employees and/or agents of Home Depot and Decora insisted that the exemplar was the same as the cabinets she ordered and received and that the exemplar was made of Maple.  Even after the exemplar was determined to be cherry and Plaintiff had inspected and identified the problem with the species and color, the Defendant still denied her claim.  It has always been and still is Defendant's position that there was no error with the order, the color or the species and that the Plaintiff got what she ordered.

It was only by installing the cabinets that the Plaintiff discovered the majority of the defects with the cabinets including but not limited to the missing pieces, the incorrect items and incorrect configuration of the cabinets. The parties do not disagree that about the finish. But the wood type could only have been determined at a later time by having an expert dissect the cabinets. Additionally, in light of Defendant's knowledge of the delay, Plaintiff' age, lack of expertise and physical ability to remove hundreds of pounds of cabinets from boxes Plaintiff did not have a reasonable opportunity to inspect and and could not have reasonably been expected to inspect these cabinets until their installation. Once Plaintiff had a reasonable opportunity to inspect them, she determined that they were nonconforming and rejected them within a reasonable period of time and in accordance with the UCC rules.

## IV. CONCLUSION

Based upon the foregoing there are numerous issues of material fact. Therefore, Defendant's Motion for summary judgment should be denied.

By _____
Robert E. Pendergast, Esquire

541 Lincoln Ave.
Pittsburgh, PA 15202
412.341.3900
888.344.6552 (fax)
Attorney for the Plaintiff
Caterina Varrasso

REP@Pendergastlaw.net