# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CATERINA VARRASSO, | ) |
| Plaintiff, | ) |
| | ) Civ. A. No. 17-01226 |
| v. | ) District Judge Nora Barry Fischer |
| | ) |
| HOME DEPOT U.S.A., INC. and | ) |
| MASTERBRAND CABINETS INC., | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION**

### I. INTRODUCTION

This action involves custom kitchen cabinets manufactured by Masterbrand Cabinets, Inc. ("Masterbrand"), and sold by Home Depot U.S.A., Inc. ("Home Depot") (collectively, "Defendants") to Caterina Varrasso ("Plaintiff"). Plaintiff sued Defendants for breach of contract and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 *et seq.* (the "UTPCPL"), alleging that the cabinets were an incorrect finish and wood type and did not meet the agreed upon specifications. (Docket No. 1-2 at ¶ 26). Presently before the Court is Defendants' Motion for Summary Judgment in which they contend that summary judgment in their favor is warranted because Plaintiff accepted the cabinets under the Pennsylvania Uniform Commercial Code (the "UCC"). (Docket No. 24 at ¶ 3).[1] For the reasons that follow, Defendants' Motion is DENIED.

---

[1] Defendants do not address the UTPCPL claim in their motion. (Docket No. 25). Instead, briefing by both sides deals exclusively with principles of contract law as informed by the UCC. Accordingly, the Court will construe the present motion as one for partial summary judgment on the breach of contract claim. FED. R. CIV. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."). To the extent Defendants also seek summary judgment as to Plaintiff's UTPCPL claim, the motion is denied.

## II. FACTUAL & PROCEDURAL BACKGROUND[2]

On April 10, 2016, Plaintiff—a seventy-three-year old widow—went into the Home Depot Store located in Allison Park, Pennsylvania to purchase kitchen cabinets. (Docket Nos. 1-2 at ¶¶ 3, 12–13; 28-6 at ¶ 2). After consulting with a Home Depot employee regarding the purchase and reviewing an exemplar of the cabinet wood and finish, Plaintiff paid $22,561.61 in full for custom-made Decora cabinets. (Docket No. 1-2 at ¶¶ 12–14). Plaintiff alleges that she ordered cabinets that met specific measurements for her kitchen and were the same wood and finish as the exemplar she viewed, which she contends was cherry wood with a teaberry finish. (*Id.* at ¶ 14). Home Depot's designer assisted with the design of Plaintiff's kitchen cabinets and provided a schematic representing the cabinets she had purchased. (*Id.* at ¶ 15, pp. 17–19).

When the cabinets arrived at the Allison Park Home Depot store on or about June 1, 2016, the store contacted Plaintiff and requested that she accept the delivery at her home. (*Id.* at ¶ 20). Home Depot's representative informed Plaintiff that it would charge a fee to store the cabinets, so Plaintiff decided to accept the delivery at her home despite the fact that her kitchen was not yet ready for installation. (Docket Nos. 26 at ¶ 3; 29 at ¶ 3; 1-2 at ¶¶ 21–22). As a result, the cabinets were stored in Plaintiff's garage without opening or inspecting them until on or about August 4, 2016. (Docket No. 1-2 at ¶¶ 22–23).

On that same date, Plaintiff hired a contractor to install the cabinets. (Docket Nos. 26 at ¶¶ 4–5; 29 at ¶¶ 4–5). During the installation, it became apparent to Plaintiff that the cabinets were of the wrong configuration and did not comport with the specifications of her order. (Docket Nos. 28-6 at ¶ 9; 28-5 at pp. 5–6). Specifically, Plaintiff discovered that there were missing pieces, extra

---

[2] The factual background is from the undisputed evidence of record, including the Concise Statements of Material Facts and admissions pursuant thereto; evidence not properly disputed on the record; and the disputed evidence of record viewed in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

pieces that did not belong, drawers where there should have been doors, and the cabinets were staggered instead of straight. (Docket Nos. 1-2 at ¶¶ 24–26; 28 at p. 2; 28-5 at pp. 5–6). Plaintiff also noticed that the color and consistency of the cabinets did not match the exemplar, which made her suspicious about the wood type and the finish of the cabinets. (Docket Nos. 1-2 at ¶ 26; 28-6 at ¶¶ 10, 12). Plaintiff avers that she immediately went to the Home Depot store in Allison Park and spoke with the manager, Pamela Narvett, and the next day Ms. Narvett and a representative from Decora went to Plaintiff's home to inspect the cabinets. (Docket Nos. 1-2 at ¶¶ 27, 31; 7 at ¶¶ 27, 31; 28-5 at p. 6). Defendants insisted that the cabinets met the specifications of Plaintiff's order. (Docket Nos. 1-2 at ¶ 33; 7 at ¶ 33). Defendants also maintained that Plaintiff had ordered maple cabinets—instead of cherry wood as Plaintiff believed she ordered—and that the exemplar from the store was also made of maple. (Docket Nos. 1-2 at ¶ 33; 7 at ¶ 33). However, when the exemplar was later dissected it turned out to be made of cherry wood, which confirmed Plaintiff's suspicions that the cabinets she had received were of the wrong wood type.[3] (Docket Nos. 1-2 at ¶ 35; 28-5 at p. 7; 28-6 at ¶¶ 12–13). Plaintiff's request for a refund was denied by Defendants. (Docket Nos. 1-2 at ¶ 40; 7 at ¶ 40).

Based upon the foregoing, Plaintiff initiated this action in state court on August 11, 2017, alleging breach of contract and violation of the UTPCPL. (Docket No. 1-2). On September 20, 2017, Defendants removed the case to this Court based upon diversity jurisdiction and filed an Answer on September 27, 2017. (Docket Nos. 1; 7). On April 18, 2018, after the completion of discovery, Defendants filed a Motion for Summary Judgment, a supporting brief, and a Concise Statement of Material Facts with an Appendix. (Docket Nos. 24; 25; 26). On May 18, 2018, Plaintiff filed a Response to Defendants' Motion for Summary Judgment, a brief in opposition,

---

[3] For the purposes of this motion, Defendants concede that the cabinets delivered to Plaintiff were of the wrong wood type. (Docket No. 26 at p. 1 n.1).

3

various exhibits, and a Response to Defendants' Concise Statement of Material Facts. (Docket Nos. 27; 28; 28-3–6; 29). As the present Motion for Summary Judgment has been fully briefed, it is now ripe for disposition. The Court's analysis follows.

**III. STANDARD OF REVIEW**

Summary Judgment is appropriate when the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact is one that could affect the outcome of litigation. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *N.A.A.C.P. v. North Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The initial burden is on the moving party to adduce evidence illustrating a lack of genuine, triable issues. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). Once the moving party satisfies its burden, the non-moving party must present sufficient evidence of a genuine issue, in rebuttal. *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587). When considering the parties' arguments, the court is required to view all facts and draw all inferences in the light most favorable to the non-moving party. *Id.* (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). The benefit of the doubt will be given to allegations of the non-moving party when in conflict with the moving party's claims. *Bialko v. Quaker Oats Co.*, 434 F.

App'x 139, 141 n.4 (3d Cir. 2011) (citing *Valhal Corp. v. Sullivan Assocs.*, 44 F.3d 195, 200 (3d Cir. 1995)).

Nonetheless, a well-supported motion for summary judgment will not be defeated where the non-moving party merely reasserts factual allegations contained in the pleadings. *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010) (citing *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989)). The non-moving party must resort to affidavits, depositions, admissions, and/or interrogatories to demonstrate the existence of a genuine issue. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773 (3d Cir. 2013) (citing *Celotex Corp.*, 477 U.S. at 324).

IV. **DISCUSSION**

The sale of cabinets in this case is governed by the UCC because it is a transaction in goods. 13 Pa. C. S. § 2102. In their motion, Defendants argue that they are entitled to summary judgment under the UCC because Plaintiff accepted the cabinets by taking the delivery and, after two months of storing the cabinets, installing them into her kitchen. (Docket No. 25 at p. 5). In response, Plaintiff contends that she did not have a reasonable opportunity to inspect the cabinets because she is a seventy-three-year old widow who is not physically capable of inspecting thirty kitchen cabinets. (Docket No. 28 at p. 3). Once the cabinets were unboxed and installed by her contractor, she discovered the defects right away and immediately notified Home Depot. (Docket Nos. 27 at ¶ 3; 1-2 at ¶¶ 26–27).

Under § 2606(a), acceptance of goods occurs when the buyer:

> (1) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity;
> (2) fails to make an effective rejection (section 2602(a)), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or

5

> (3) does any act inconsistent with the ownership of the seller; but if such act is wrongful as against the seller it is an acceptance only if ratified by him.

13 Pa. C.S. §2606(a). Defendants contend that Plaintiff's failure to inspect the cabinets, coupled with her installation of the cabinets constitutes acceptance under § 2606 of the UCC. (Docket No. 25 at pp. 5–6). Although not explicitly stated in either their motion or the supporting brief, Defendants' argument appears to be based upon §§ 2606(a)(1) and (2). The Court will discuss each of these subsections in turn.

### A. SECTION 2606(a)(2)

Focusing solely on the wood type of the cabinets, Defendants argue that Plaintiff accepted the cabinets because she had "more than sufficient time to inspect" the cabinets prior to installation. (Docket No. 25 at p. 5). Defendants claim that Plaintiff's Complaint establishes that she eventually discovered that the cabinets were the wrong wood type by "simply looking at the cabinets[.]" (*Id.*) In response, Plaintiff has submitted an affidavit which reflects that Plaintiff notified Defendants that she was not prepared to install the cabinets at the time of delivery. (Docket No. 28-6 at ¶¶ 5–6 (the "affidavit")). The affidavit further establishes that even though Plaintiff took possession of the cabinets and stored them in her garage—being a seventy-three-year old widow—she was not able to unbox and inspect the cabinets upon delivery. (*Id.* at ¶¶ 2–4, 7–8). Plaintiff also rejects Defendants' assertion that a visual inspection ultimately revealed that the cabinets were made of the wrong wood type. (Docket No. 28 at p. 8). In the affidavit, Plaintiff explains that it was only after the exemplar was dissected that she became certain that the cabinets were of the wrong wood type. (Docket No. 28-6 at ¶¶ 12–13). In sum, Plaintiff argues that whether it was reasonable to wait until installation to inspect the cabinets presents a jury question. (Docket No. 28, pp. 7–8). For the reasons that follow, the Court agrees with Plaintiff.

Under § 2606(a)(2), "[a]cceptance of goods occurs when the buyer . . . fails to make an effective rejection (section 2602(a)), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them . . . ." 13 Pa. C.S. § 2606(a)(2). Section 2602(a), in turn, provides that "[r]ejection of goods must be within a reasonable time after their delivery or tender." 13 Pa. C.S. § 2602(a). Accordingly, "to avoid a default acceptance" under § 2606(a)(2), the goods must be rejected "within a reasonable time after their delivery." *SCM Grp., USA, Inc. v. Custom Designs & Mfg. Co.*, 89 F. App'x 779, 780 (3d Cir. 2004) (quoting 13 Pa. C.S. § 2602(a)). Whether the buyer inspected the goods within a reasonable amount of time depends upon the "the nature, purpose, and circumstances" of the buyer's act. 13 Pa. C.S. § 1205. Thus, under Pennsylvania law, a reasonable time for inspection after delivery for rejection of defective goods "is generally deemed a question of fact to be resolved by the fact finder, and no express outside time limit is set." *SCM Grp., USA, Inc.*, 89 F. App'x at 780 (quoting *Ford Motor Credit Co. v. Caiazzo*, 564 A.2d 931, 936 (Pa. Super. Ct. 1989)). However, "where the facts are undisputed, the question of whether there has been an unreasonable delay in inspecting goods purchased and advising the seller of imperfections is one of law for the Court." *Magnavox Co. v. Royson Eng'g Co.*, 169 A.2d 559, 561 (Pa. Super. 1961).

Applying the foregoing legal principles to the present case, the Court concludes that Defendants have not met their burden of proving that no genuine dispute of material fact exists as to whether Plaintiff accepted the cabinets by default under § 2606(a)(2) for three reasons. First, there is a factual dispute regarding whether Defendants knew that Plaintiff was not prepared to install the cabinets at the time of delivery. This determination is essential in gauging the reasonableness of a two-month delay in the inspection of the cabinets. For example, a jury could find that unpacking the cabinets until just before installation would not only have been

uneconomical, but also would have exposed the cabinets to unnecessary risk of damage. Second, the Court is not convinced that, as a matter of law, Plaintiff had a reasonable opportunity to inspect the cabinets prior to installation. Plaintiff claims that, as an elderly woman, she was physically incapable of unboxing the cabinets. Certainly, a jury could find that Plaintiff's age and physical capacity precluded her from inspecting the cabinets until installation. Finally, Plaintiff convincingly argues that whether the cabinets were of the correct wood type was not ascertainable through a visual inspection and had to be determined by dissecting the exemplar. Given that the finish on both the exemplar and the cabinets was the same—i.e., teaberry—a jury could find that a visual inspection would not have revealed whether the cabinets were made of maple or cherry wood. All of these issues are more appropriately decided by a jury rather than by summary judgment proceedings because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Accordingly, the Court cannot conclude, as a matter of law, that Plaintiff accepted the cabinets by default under § 2606(a)(2).

B. SECTION 2606 (a)(3)

Defendants also contend that Plaintiff's installation of the cabinets constitutes acceptance under the UCC. (Docket No. 25 at pp. 5–6). In support of this contention, Defendants rely primarily on *Marbelite Co. v. City of Philadelphia*, 222 A.2d 443 (Pa. Super. 1966).[4] (Docket No. 25 at pp. 4–6). Plaintiff argues that *Marbelite* is inapposite because "she never used the cabinets and

---

[4] In their brief, Defendants also cite *Marjam Supply Co. v. BCT Walls & Ceilings, Inc.*, No. 02-CV-2890, 2003 WL 21497515, at *1 (E.D. Pa. June 26, 2003). However, Defendants' reliance on that case is misplaced as it implicated § 2606(a)(1) which provides that "[a]cceptance of goods occurs when the buyer . . . after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity . . . ." 13 Pa. C.S. § 2606(a)(1). In this case, Plaintiff never signified to Defendants either that the cabinets were conforming, or that she would retain them in spite of their nonconformity.

8

immediately removed them." (Docket No. 28 at p. 7). As explained below, the Court agrees with Plaintiff.

Under § 2606(a)(3), "[a]cceptance of goods occurs when the buyer . . . does any act inconsistent with the ownership of the seller . . . ." 13 Pa. C.S. § 2606(a)(3). In *Marbelite*, the seller sued the City of Philadelphia to recover the contract price of traffic signal equipment which the city had installed and had been using for an extended period. 222 A.2d at 444. The city argued that there was no acceptance because the equipment failed to meet certain specifications. *Id.* The court rejected that argument and held that the city's use of the equipment was patently inconsistent with the seller's ownership and, therefore, constituted acceptance under the UCC. *Id.* The court, however, found it dispositive that despite the alleged nonconformities, the city never sought to rescind the contract, never offered to return the equipment, and never sued for money damages. *Id.* at 445.

Here, Plaintiff's deposition testimony establishes that she returned home during the installation process and discovered that the cabinets did not comport with the specifications of her order. (Docket No. 28-5 at pp. 5–6). The record further reflects that upon discovering the nonconformities, Plaintiff immediately contacted Defendants who came to inspect the cabinets at her home. (Docket Nos. 1-2 at ¶¶ 27, 31; 7 at ¶¶ 27, 31; 28-5 at p. 6). In the Court's estimation, Plaintiff's attempted installation of the cabinets cannot be characterized as being patently inconsistent with Defendants' ownership of the cabinets. Accordingly, the Court concludes that Defendants have not met their burden of proving that no genuine dispute of material fact exists as to whether Plaintiff accepted the cabinets under § 2606(a)(3).

## V. CONCLUSION[5]

Based upon the foregoing, the Court will DENY Defendants' Motion for Summary Judgment. An appropriate Order follows.

*/s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date: August 10, 2018

---

[5] Even if Defendants had established that Plaintiff accepted the cabinets, summary judgment would have been inappropriate because an acceptance is revocable. The UCC allows the buyer to reject goods that "fail in any respect to conform to the contract[.]" Pa. C.S. § 2601(1). However, if he accepts the goods, the buyer may revoke his acceptance only if the nonconformity "substantially impairs its value to him," and he has accepted it either "(1) on the reasonable assumption that nonconformity would be cured and it has not been seasonably cured; or (2) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the assurances of the seller." 13 Pa. C.S. § 2608(a). And "[u]nder Pennsylvania law, the questions of whether a nonconformity exists, whether the nonconformity substantially impairs the value of the good[s] to the purchaser, and whether the rejection or revocation of acceptance of goods occurred within a reasonable time after tender or delivery are generally deemed to be questions of fact to be resolved by the fact finder." *Am. Atelier, Inc. v. Materials, Inc.*, 2015 WL 9461326 (E.D. Pa. 2015), *aff'd*, 675 F. App'x 149 (3d Cir. 2017) (citing *Ford Motor Credit Co. v. Caiazzo*, 564 A.2d 931, 936 (Pa. Super. 1989).